Thank you. May it please the court, Fred Diamonstone on behalf of the appellant, Diana Raine Steinmetz. With me in court today is Jeremy Friedman, my co-counsel, and Ms. Raine, Ms. Steinmetz is also present in the courtroom. I would like to, if possible, reserve two minutes for rebuttal, your honor. Go for it. I don't guarantee you'll get any rebuttal. I understand, your honor. I would like to address two issues, first being the probable cause issue, and second, if we have time for it, the qualified immunity issue. On the probable cause issue, a jury could readily find that the wife was the victim rather than the abuser, given the totality of circumstances in this domestic violence case. What difference does it make as to what a jury could do? Well, your honor, where there are disputed facts on probable cause, it's typically a jury question. There is settled law on that in this circuit. Yeah, I understand, but probable cause is simply that. It's not proving it. That is correct, your honor. But under the Washington statute, in a domestic violence case, it is the primary aggressor who is arrested, and that is relevant to the officer's determination of probable cause. Well, given what the officers on the scene saw, which was that he was the one who was beat up, why isn't that just sufficient to give them a reasonable basis for believing that she was the primary aggressor rather than he? It may not be correct, but why doesn't she have the officer a reasonable cause to believe it? Well, a couple of things, your honor. First of all, both of these parties had scratches. The officer's report reflects that she had a laceration, an H-shaped bloody mark on her cheek. There were also the photographs that were taken of both of the parties, and as the officer, Officer Isaac, testified at deposition, the photograph that was taken by the police, documented in the police report, shows evidence of redness around her trachea, which is consistent with having been choked. In terms of the, he referred to Mr. Steinmetz as having been beat up, and we've submitted into the record, and I hope your honors can see this, certainly it's in the supplemental excerpt of record that we've submitted, the photograph that the police took of him, and there are two small scratches on his neck. The so-called bloody shirt collar that the officer described in his report simply is not a bloodied shirt collar. Soaked in blood, I believe, was the officer's description of it. So the officer's report prepared a case that wasn't consistent with the facts that he observed, wasn't consistent with the photographic documentary evidence, and I think the fact that the police report describes things that aren't accurate in multiple respects, both with respect to the extent of her injuries as well as the extent of his injuries, that that certainly creates a jury question as to whether or not Officer Isaac and his training officer, Officer Farland, had probable cause to make this arrest. Well, but the problem that I have is that we're not at a jury, and the probable cause finding doesn't have to prove the whole case. In fact, the case is a case to be proven at trial. Probable cause is a different finding, and here we have evidence, at least from his report, that your client seemed very confused and disoriented in the interview. When asked about her condition, she wouldn't say fine. She would snap at him and wouldn't say anything to the questions except, I don't know, and then thereafter give a response. Was not giving clear and concise answers to the questions. There were no bruises, red marks, or other evidence, as what his report suggests, confirming that there were scratches on her neck and a spot on her cheek. And then when he looked at the evidence on the victim, it confirmed with the stories that he saw and that he thought then, based on the evidence and based on his examination, that she was the aggressor, and he made the determination. Now, I'm supposed to suggest, not because the jury is going to believe him or not, but whether, given what we do for probable cause, that that was wrong. Now, I guess I'm trying to figure out, that's not even given the second part of the test, which is how was the reasonable officer to know he was violating the law, that he made a bad decision. I guess you've got to tell me about that, just reading what he said. Seems to me one can always argue about facts. I always did that as a lawyer. I was always on the defense. I was always trying to help the person you might be trying to help if you were defending your criminal. But the bottom line is, how do I say in that situation there's no probable cause? Well, Your Honor, I think the facts, as stated in the police report, distort the facts that were available and visible in several respects. First of all, again, the photograph, as acknowledged by Officer Isaac, showed something that is different than what is in his report in terms of the redness to the neck. Under Washington law, an assault is an unlawful touching of another person. It is not unlawful for someone to reasonably defend themselves from an attack. The husband was preparing to strike the wife when she reached out and said, no, you're not going to do that to me again. There was a history of abuse here. The Washington legislature, and I think the Fourth Amendment, require that to determine whether the force is unlawful, the history needs to be considered because if she is reasonably acting in self-defense from yet another attack by an abusive husband, she is not acting unlawfully. And I think that's settled law in Washington State. We have a common law definition of assault that is routinely utilized in these cases at all levels of assault. Factually, as I understand it, she was detained for how long? She was arrested. She was, I believe this was a Friday afternoon. She was released on bail on Monday. So she was held for three days. She was held for three days. Then the case came up for hearing when? Because she bailed out, the first court hearing was held about two weeks later, and it was at that hearing, immediately before that hearing, the day before that hearing, she retained counsel, and that's when the release-stay agreement was entered with really no meaningful investigation of the case. She had a lawyer. She did have counsel. And did he initiate the stay-release agreement? Or did the government? That is unclear. What we do know is that the form that was used on the release-stay agreement was prepared by the standard stock form that the government's lawyer had, and that criminal defense counsel filled in a few blanks. He filled it in, and she agreed to it. She's an educated lady? She's an educated lady, but it's our position, Your Honor, that she was really continued in a state of shock. In many respects, the same kind of shock that her confusion at the scene reflected. And so, therefore, she and her lawyer allowed her to enter into this agreement? This was really rather hastily done. There's no evidence in the record as to whether this was a knowing and intelligent review. That isn't my question. Her lawyer was there, she was there, and they both entered into this agreement. She entered into it with him giving consent. That is correct, Your Honor. And the upshot of it was that there was a stay, and ultimately the criminal charge was dismissed. Is that right? It was, and it was dismissed several months earlier than the stay provided when her new criminal defense lawyer provided additional information concerning the history of abuse and the phone call and the fact that the training officer failed to talk with the woman from the abuse center to confirm the history of abuse. Your Honors, I see I have just about a minute left. I would like to reserve that if possible. All right. Thank you. Thank you. May it please the Court, my name is John Justice. I represent the city of Kamas, officers Isaac, Nelson, and Farland in this matter. The district court's grant of summary judgment should be affirmed in this case. The district court found correctly that there was probable cause established by the evidence that the officers considered at the time of arrest. This is an objective analysis. It's done. It's not done with the benefit of hindsight. It's based on the information available to the officer at the time of arrest. The summary judgment can be affirmed based on the fact that there was probable cause as a matter of law, or it can be affirmed on the basis of a qualified immunity analysis to say, could a reasonable officer have concluded that there was probable cause to arrest the appellant for the crime of domestic violence assault? Probable cause, as this court has alluded to, is not a high or overly critical analysis. The court has stated in the Ninth Circuit, probable cause exists when there is a fair probability of criminal conduct by the individual that's arrested. In this case, the officer, Officer Isaac, who was conducting the investigation, he spoke with the victim or the husband, and he spoke with Mrs. Steinmetz. On two occasions each, he interviewed and re-interviewed each person. He examined their demeanor. He examined their injuries, and he had to make a decision at that point which party to arrest. Under Washington law, if an officer arrives at a domestic violence incident, somebody is going to be, has to be arrested. The counsel says that the picture refutes his report. Do you agree with that? No, Your Honor. What the record clearly shows is that Officer Isaac was shown a photocopy of a photograph and asked whether or not in that photograph, or excuse me, in that photocopy, did the officer witness redness looking at the photograph, the photocopy of the photograph. He was not asked to testify as to whether or not that photocopy was consistent with what he viewed the night of the arrest. Mrs. Steinmetz has not placed in the record any testimony from herself that she had redness on her throat. In fact, if you look at the police officer's report, he very clearly states that he did not witness any discoloration or marking on the neck consistent with her claim that she had been choked. And what we balanced against that is the undisputed evidence coming from the appellant herself that she made unwanted physical contact with her husband's neck with her nails and caused the injuries that the officer witnessed that night. And so the fact that these photographs, these photocopies of these photographs were shown to the officer at his deposition does not establish that the officer the night of the arrest made the same observations. And there's nothing in the record that suggests otherwise. Do you argue or would you argue that the police officer reasonably could have arrested the victim? Well, the officer could have decided that both parties made physical contact with each other. But under the Washington statute, which the appellant has cited, the legislature has suggested to officers that they should not simply arrest both parties, even if there is mutual evidence of mutual assault. That is my question. Could he have arrested reasonably both persons? I think an argument Given this evidence. Sure. An argument could be made that both parties assaulted each other and both parties could have been arrested. That does not negate probable cause to arrest the appellant, even in that scenario where there's a mutual assault. The officer should Because of the evidence? Because of the evidence and because of the severity of injuries. And that's where this came down to. If you look at the police officer's report, he is having to make an obviously difficult decision. The appellant suggests that officers should come into this with some sort of predisposition that because you have a female and a male, that the male should be more suspected of committing the assault than the female. In this case, Cohen shows that the officer put any predisposition in that regard aside and did an objectively reasonable investigation to determine, in this case, who was the primary aggressor, not simply assuming that because there's a female-male involvement that the female was the victim. He did a thorough investigation, made a decision that officers need to make all the time, which is who to arrest in this very much of a he said, she said, no independent eyewitnesses. And so in that case, the officer is told by the legislature, you shouldn't just arrest both parties even if there's evidence of mutual assault. You should decide who was the primary aggressor in this case. But under Washington law, also, that he should be sensitive to abuse cases, should he not? Certainly, Your Honor. Abuse? Yes, and that is what is clear. Could it be argued that they disregarded the effort by the plaintiff to be in touch with the abuse counseling service? Well, the evidence in the record is that the person that the appellant wanted the officer to speak with had no evidence of any history of domestic abuse between these parties. The officer didn't talk to her. That's true, but what we can go with is what's in the record. What's in the record about that? The record is that this person had no evidence. Did you depose that person? The plaintiff was deposed and asked whether or not she had ever disclosed. No, but you didn't depose the person on the other end of the phone call. No. So you don't know what the other person would say, do you? We know what the appellant says she would say, which is she did not have any evidence of any domestic violence history between these individuals. The appellant said that. Correct. In a deposition. That's correct. Did the fact that the victim called 911 have anything to do with this? It was a factor raised by the officer in his probable cause statement. It was part of his report that that had something to do with it, but there's no evidence that that was a deciding or critical factor that the officer used to make the arrest because, again, he interviewed and re-interviewed both parties to the case, examined their physical injuries, and then made the decision as which party to arrest. Is the content of the 911 report in the record? There is no transcript of the 911 call in the record. It's undisputed that the husband is the one that made the call, though. I'd like to spend... But the circumstances around making it are the problem on summary judgment, aren't they? Well, the appellant does not dispute that the husband made the 911 call. He doesn't dispute that, but that said, the reason he did was he kept her from doing it. And that's her allegation, and I would agree that that's her allegation. On summary judgment. But the question for the summary judgment is not who made the 911 call or why. It's was there objective evidence at the time of the arrest to support the determination that there was probable cause. Not even that this judge or this court might analyze a probable cause determination or a jury might find that she wasn't guilty beyond a reasonable doubt, but that what objectively at the time he made the arrest did he have probable cause. The other issue in this case in which the district court could be affirmed is the release-dismissal agreement. The appellant signed with the benefit of counsel an agreement to hold the city and its employees harmless from any civil liability arising out of her arrest. By doing that, she received the benefit of that agreement. She had her criminal charges dismissed, and the city lost its ability to prosecute her. If they had prosecuted her and she'd been found guilty, then this case would not have been able to be brought. And by entering that agreement, she got the benefit of that, and the city lost its ability to pursue the prosecution. The appellant is a college-educated woman. She does work for Microsoft. She was represented by counsel. This proceeding went before a judge. The judge entered the stay. There's no evidence in the record that it was not a voluntary act on her part. And that summary judgment could be affirmed if that release-dismissal agreement is upheld. I'd like to just read in closing here one quote. The Supreme Court has held that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present. When that happens, the officials should not be held personally liable. In this case, Officer Isaac correctly concluded that there was probable cause to arrest the appellant. A reasonable officer certainly could have made that same conclusion based objectively on the evidence that he was presented with. If the Court has any further questions, I'd be happy to answer them. None. Thank you. I said none. I didn't even look at it. Go ahead. Thank you, Your Honor. The first point I think I would like to make, Your Honors, is that an objectively reasonable investigating officer would not prepare a report that distorts the facts in multiple dimensions and omits any efforts by the wife to have presented her efforts concerning the history of abuse. And I think that goes to both the distortions in Officer Isaac's report and also to Officer Farland's failure to identify. I believe the excerpt of record at pages 35 through 37 contains Mrs. Steinmetz's testimony concerning her efforts to explain to Officer Farland the history of abuse. And as Officer Farland is rolling her eyes and refusing to listen, that's when Mrs. Steinmetz makes the effort to call the third party, the Abuse Recovery Ministry's counselor, in order to let her know about that history. I could say more, but I see that my time is over. Thank you very much. Thank you, Your Honors. Case 09-35657, Steinmetz v. City of Kamas, is now submitted. Case 09-70622, Van Kamp v. Commissioner of Internal Revenue Service, was previously submitted on the briefs. And Case 09-71513, Ravuvu v. Holder, was also previously submitted on the briefs. We thank counsel for their argument, and we thank, again, Honorable Hart for being with us to do what we need to do. And this panel is permanently adjourned.
judges: Rymer, Nr Smith, Cjj Hart (N. Illinois), Dj